**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence Pace, Jr., | No. CV-21-00186-TUC-RCC (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On April 25, 2022, Magistrate Judge Leslie A. Bowman filed a Report and Recommendation ("R&R") recommending that the Court affirm the decision of the Commissioner of Social Security Administration ("Commissioner"). (Doc. 28.) The Magistrate Judge informed the parties they had 14 days to file written objections to the R&R and an additional 14 days to respond. (*Id.* at 17.) Plaintiff filed a timely objection on May 9, 2022 (Doc. 19). The Commissioner did not file a response.

## I.    Standard of Review

The standard a district court uses when reviewing the recommendation of a magistrate judge depends on whether or not a party objects; where there is no objection to a magistrate judge's factual or legal determinations, the district court need not review the decision "under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, when a party objects, the district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return

1
2
3
4
5

the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). Moreover, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a de novo or any other standard." *Thomas*, 474 U.S. at 154.

6
7
8
9
10
11
12
13

The Court must perform this de novo review of issues raised in an objection regardless of whether the other party files a response. *See* Fed. R. Civ. P. 72(b)(2)–(3) (requiring de novo review of objections, but not mandating a response); *see also* 28 U.S.C. § 636(b)(1)(C). Although it may benefit a party to file a response, the response must be filed within the time prescribed in Federal Rule of Civil Procedure 72(b)(2). Here, the Commissioner chose not to respond to Plaintiff's objections. Accordingly, the Court has performed a de novo review of this matter without the benefit of the Commissioner's position.

14
15
16

There being no objection to the factual summary of the case, the Court adopts the Magistrate Judge's recitation of the facts, and only discusses the facts to the extent necessary to address Plaintiff's objections.

17

## II.      Magistrate's R&R

18
19
20
21
22
23
24
25
26
27
28

The Magistrate Judge first concluded that the ALJ did not violate the duty to fully and fairly develop the record because the ALJ's letter to Plaintiff's counsel—expressing his desire to seek additional medical interrogatories—did not mean he believed the record was ambiguous. (Doc. 28 at 8, 10.) The Magistrate Judge reasoned that the ALJ "believed that these interrogatories would be useful, but he did not say that he thought that the medical record was ambiguous and supplementation was necessary for proper evaluation of the evidence." (*Id.* at 8.) As the Magistrate Judge explained, if the ALJ ultimately believed that the additional interrogatories were necessary to properly render a decision, he would have contacted Plaintiff's counsel again or obtained the records through some other avenue. (*Id.*) Instead, the Magistrate Judge emphasized, the ALJ issued his decision without the additional interrogatories indicating he ultimately believed the record was adequate. (*Id.* at 9.) Alternatively, the Magistrate Judge concluded that the ALJ met his duty to fully and

fairly develop the record when he left the record open for supplementation following the hearing. (*Id.* at 10.)

Second, the Magistrate Judge found that the ALJ's conclusion regarding Plaintiff's Residual Functional Capacity ("RFC") was supported by substantial evidence in the record. (*Id.* at 12–13.) She noted that the finding may have been "overly optimistic" given recent x-rays suggesting Plaintiff's degenerative joint disease was worsening and a prior ALJ finding in 2010 that Plaintiff was suitable only for light work. (*Id.*) However, various other facts in the record suggested that Plaintiff's physical conditions were perhaps not as severe, providing substantial evidence for the conclusion that Plaintiff was physically-capable of performing medium work. (*Id.*) For example, the Magistrate Judge pointed to the fact that Plaintiff "was in his usual state of health with history of multiple stable medical problems" in March 2012. (*Id.* (quoting Doc. 26-17 p. 39).) Plaintiff also retained his commercial driver's license because he "wanted to leave his options open," indicating that he thought he would be able to work as a truck driver in the future, a medium semi-skilled level position.  (*Id.* (quoting Doc. 26-3 p. 28, 33).) The Magistrate Judge further highlighted the ALJ's observation that Plaintiff had been working for decades while suffering knee and back pain. (*Id.* at 12–13.) Both the Magistrate Judge and ALJ also observed that Plaintiff had not received any injections in his knees to manage pain in the year prior to the hearing although he had done so previously; they also noted that Plaintiff was no longer using marijuana or other pain management medication. (*Id.*) Additionally, the Magistrate Judge emphasized the medical opinion evidence supported the ALJ's RFC finding because Drs. Schofield and Rabelo had determined that Plaintiff was capable of medium work. (*Id.* at 13.) And finally, the Magistrate Judge pointed to the fact that Plaintiff had, in 2014, planned a hiking trip out of state despite his reported physical impairments, suggesting that his symptoms may not have been as severe as Plaintiff stated. (*Id.*)

Lastly, the Magistrate Judge found that the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony regarding disabling psychological impairments. (*Id.* at 14–16.) As with his physical impairments, there was evidence that Plaintiff's psychological symptoms were not as debilitating as he testified, based on his

commercial driver's license and "his usual state of health" at the time he transferred care in 2012. (*Id.* at 14.) Furthermore, the Magistrate Judge observed that Plaintiff declined psychiatric medication when he sought treatment in 2013. (*Id.* at 15.) The physician remarked that Plaintiff reported depressive symptoms that typically "lasted only for a few hours, rarely a few days." (*Id.*) Between 2013 and 2014, Plaintiff also sought and completed treatment programs for his psychological conditions and reports from those experiences suggested some improvement. (*Id.*) The Magistrate Judge also referred to Plaintiff's planned hiking trip and noted that, even though Plaintiff may not have ultimately taken the trip, the fact that he planned it showed he "apparently believed that he was healthy enough to take such a trip, which is evidence that supports the ALJ's decision to discount [Plaintiff's] subjective symptom testimony." (*Id.*) The Magistrate Judge then summarized the medical opinions of experts who had reviewed Plaintiff's psychological conditions. (*Id.* at 16.) "They opined that [Plaintiff] had only moderate limitation in his ability to interact socially." (*Id.*) The Magistrate Judge found that the ALJ had considered the record as a whole, including information that Plaintiff was involuntarily removed from one of his residential treatment programs due to verbal altercations with staff. (*Id.*) As the Magistrate Judge concluded, "[t]he ALJ acknowledged that Pace suffers from severe mental impairments that limit his ability to work," and acknowledged these limitations in the RFC finding that Plaintiff, though not disabled, would need to limit certain social interaction in his work. (*Id.* at 17.)

### III.    Plaintiff's Objections

Plaintiff objects to all three of the Magistrate Judge's findings. (Doc. 29.) First, Plaintiff asserts the ALJ did not meet his duty to fully and fairly develop the record, which "arose the moment the ALJ realized that he did not have enough information to resolve the case on his own." (*Id.* at 1–2, 4.) According to Plaintiff, "the ALJ's letter to counsel explaining that he intended to seek the services of three separate medical experts indicated that the ALJ believed there to be ambiguity or insufficiency of the record . . . ." (*Id.* at 1.) Plaintiff urges this Court not to assume "that the ALJ believed that the interrogatories would be useful, but not necessary." (*Id.* at 2.) Rather, Plaintiff asks this Court to

> presum[e] (based on the types of experts intended to be solicited) the ambiguity or incompleteness had something to do with the complexity of Mr. Pace's claimed systemic impairments; his uncertain psychological condition and how that interacts with his systemic conditions; and the onset and continuing effects of his degenerative conditions.

(*Id.* at 3.)

Next, Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's decision that Plaintiff could perform medium work because his degenerative conditions had improved. (*Id.* at 4.) Although Plaintiff concedes there is some evidence that he could perform medium work, he maintains that the objective evidence "is not at the level that a reasonable person would accept as sufficient to draw that conclusion." (*Id.* at 6.) Plaintiff asserts that he retained his commercial driver's license but worked in a partially accommodated position; his lack of pain killers cannot support a finding that he is not disabled; the information that Plaintiff planned to go on a trip came from an unreliable source; and "the State Agency physicians did not have access to most of this voluminous record." (*Id.* at 5.) With respect to the last point, Plaintiff suspects that the experts only accessed the summary of the 2013 L-spine x-ray rather than the full x-ray report. (*Id.*)

Finally, Plaintiff challenges the Magistrate Judge's finding that the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony regarding his mental symptoms. (*Id.* at 6.) Plaintiff emphasizes that he alleged PTSD as his condition and not depression, so the fact that he stated he only experienced depression that lasted a few hours was insignificant. (*Id.*) Plaintiff again questions the credibility of the information that Plaintiff was going on a hiking trip, stating, "it is a second-hand report of a statement made during a followup call from a residential treatment center that Mr. Pace left on unfriendly terms; [thus] the accuracy of the report is questionable." (*Id.*) Furthermore, even if Plaintiff planned on traveling, "a one-time intent to remove oneself from society and its pressures is not indicative of functionality in a workplace." (*Id.*) Finally, Plaintiff disagrees that his time in residential treatment could represent notable gains given that he left on bad terms. (*Id.* at 6–7.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    Discussion

A claimant is "disabled" for the purpose of receiving benefits if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

The ALJ follows a five-step sequential process to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The claimant bears the burden of establishing (1) he is not working; (2) he has a severe physical or mental impairment; (3) his impairment meets or equals the severity of a listed impairment; and (4) his residual functional capacity precludes him from performing his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv).

At step five, the Commissioner bears the burden of establishing that the claimant can "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity, and he suffered from "diabetes mellitus, obesity, obstructive sleep apnea, degenerative arthritis of the spine, degenerative joint disease of the knees, hypertension, anxiety, [and] posttraumatic stress disorder." (Doc. 26-3 at 23.) At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P,

Appendix 1 . . . ." (*Id.* at 25.) He then found that Plaintiff had the RFC to perform medium work with minor postural and environmental limitations, including adjustments for his psychological conditions like limited contact with the public and co-workers. (*Id.* at 27.) At step four, the ALJ assumed that Plaintiff could not perform any of his past work, but, at step five, he determined that Plaintiff was not disabled considering his "age, education, work experience, and residual functional capacity" in application of the Medical-Vocational Rule 203.29. (*Id.* at 33–34.)

Upon de novo review, the Court agrees with the Magistrate Judge's first conclusion that the ALJ did not violate his duty to fully and fairly develop the record. "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is triggered when there is "[a]mbiguous evidence" or when the ALJ concludes "that the record is inadequate to allow for proper evaluation of the evidence." *Id.* Once triggered, the duty may be discharged by "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

Here, however, the ALJ made no finding that the record was ambiguous or that it required supplementation before he could properly decide the case. In other words, as the Magistrate Judge concluded, the ALJ's letter to counsel alone did not evidence a subjective finding that the record was inadequate. Furthermore, there is also no evidence that the record was objectively incomplete, nor, as the Magistrate Judge highlighted, does Plaintiff point to any objective ambiguity. The Court further agrees with the Magistrate Judge's finding that even if the record were ambiguous, the ALJ discharged his duty by agreeing to keep the record open to allow supplementation. *See Tonapetyan*, 242 F.3d at 1150.

Second, the Court agrees with the Magistrate Judge's conclusion that substantial evidence supports the ALJ's RFC finding despite some evidence that Plaintiff's physical conditions had worsened. The Court must affirm the ALJ's decision if it is both supported by substantial evidence and free of legal error. *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020). Substantial evidence means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison, Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Although Plaintiff argues that the evidence does not support the rational conclusion that Plaintiff could perform medium work, the Court disagrees. As the Magistrate Judge made clear, the question is not whether the evidence can support a different conclusion; rather, on the standard of review required of this Court, the question is whether there is "more than a mere scintilla but less than a preponderance" to support the ALJ's findings. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The facts cited by the Magistrate Judge regarding possible improvement of Plaintiff's physical conditions provide the substantial evidence to support the ALJ's RFC conclusion, even if, as the Magistrate Judge noted, some facts could suggest otherwise. With regard to Plaintiff's argument regarding the records reviewed by the medical experts, the Court reviewed the opening brief, response brief, and reply brief and agrees with the Magistrate Judge's observation that "[t]he record available to the state agency physicians included x-ray studies indicating degenerative disc disease at L1-L4 and facet arthropathy at L5-S1, which indicates that they had access to the May 2013 x-ray studies cited by [Plaintiff]." (Doc. 28 at 13 n.4.) In other words, the examiners had access to information regarding Plaintiff's degenerative disc disease and facet arthropathy, which appeared in the 2013 x-rays. The examiners considered this information and still determined that Plaintiff had the physical capacity to perform medium work. The ALJ's finding was, therefore, not in error.

Finally, the Court agrees with the Magistrate Judge that the ALJ provided clear and convincing reasons to discount Plaintiff's testimony regarding his psychological conditions and substantial evidence to support the finding that Plaintiff was not disabled as a result of these conditions. While the ALJ is not required to accept the claimant's symptom testimony, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009), absent evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's symptom testimony, *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). "The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ did just that. The ALJ observed Plaintiff's "usual state of health" and the fact that he retained a commercial driver's license that would enable him to perform otherwise medium level work. As the Magistrate Judge noted, the ALJ also highlighted the fact that Plaintiff had declined medication for his mental health conditions. Although Plaintiff argues that his statements regarding bouts of depression are irrelevant because he alleged PTSD and not depression, Plaintiff does not contest the fact that he attended more than one treatment program in 2013 and 2014. Although Plaintiff experienced conflict in these programs and was ultimately removed from one, other reports reviewed by the ALJ and addressed by the Magistrate Judge indicate that he did make progress in treating his conditions despite these issues. With regard to Plaintiff's hiking trip, the Court agrees with the Magistrate Judge that this is some evidence relevant to discounting Plaintiff's symptom testimony and it was not error for the ALJ to cite this as clear and convincing evidence even if Plaintiff never went on the trip. The Court agrees that the plan to take a hiking trip indicates Plaintiff "apparently believed that he was healthy enough to take such a trip, which is evidence that supports the ALJ's decision to discount [Plaintiff's] subjective symptom testimony." (Doc. 28 at 15.) Lastly, the Court agrees with the Magistrate Judge that the ALJ did not err by considering the expert medical opinions that concluded Plaintiff "had only moderate limitation in his ability to interact socially" in conjunction with the fact that Plaintiff was involuntarily removed from one of his treatment programs. (*Id.* at 16.) As the Magistrate Judge concluded, the ALJ appears to have considered the record as a whole, recommending additional limitations on Plaintiff's capacity specifically related to his social interaction. This does not indicate that the ALJ erred, but, on the contrary, that the ALJ recognized Plaintiff's potential limitations but nonetheless found that Plaintiff was not disabled as a result of them.

1    In summary, the Court has reviewed the record and the briefs as well as the
2  Magistrate Judge's R&R and Plaintiff's objections. The Court finds the Magistrate Judge's
3  conclusions well-reasoned and agrees with her findings. Accordingly,

4        **IT IS ORDERED:**

5    1. The Report and Recommendation is **ADOPTED**. (Doc. 28.)

6    2. The decision of the Commissioner denying Plaintiff's claim for benefits is
7        **AFFIRMED**. The Clerk of Court shall close this case.

8        Dated this 24th day of January, 2023.

Honorable Raner C. Collins
Senior United States District Judge